Francis G. Hooley, J.
This is a proceeding instituted pursuant to article 78 of the Civil Practice Act to review a decision of the Zoning Board of Appeals of the Town of Oyster Bay, which granted the application of the Hicksville Airpark Club, the intervenor-defendant, to conduct and operate an airfield on property owned by Hicksville Airpark, Inc., a domestic corporation. George V. Spohrer, one of the members of the Hicks-ville Airpark Club, is the only stockholder of the defendant Hicksville Airpark, Inc.
The eight petitioners own neighboring properties located in Residence A, B, C and D districts, comprising over 500 acres of land and assessed for over $500,000 of which about 40% represents residences and accessory improvements.
The property in question consists of 35 acres of land in the Town of Oyster Bay which is located about 2,100 feet south of Jericho Turnpike, a short distance east of its intersection with the Hicksville-Oyster Bay Road in a district which had been zoned for residential purposes.
In April, 1945, Spohrer applied to the Board of Appeals for permission to have an aviation field on another tract of land owned by one Froelich of approximately the same size, separated from the land comprising the aviation field in question only by a road known as Robbins Lane. That application was denied by the board on May 17, 1945 in a written decision which read as follows:
“ Report of the Board of Appeals of the Zoning Commission on Application No. 1018 of George V. Spohrer, 37-01 82nd St., Jackson Heights, N. Y.
“ On two occasions the Board visited the property in question. The second time together with the appellant, Mr. Spohrer, and *259 one of the adjacent property owners, Sam Underhill. We carefully reviewed all phases of the proposed change in going over the property and calling attention to other adjacent property owners of the proposed variance. At the public hearing, there was represented objections from adjacent property owners to the north, to the west, and to the east, as well as others who were the farther distance but who felt that planes flying over the fields in the process of landing or leaving would create a condition that would be detrimental to their best interest. In view of the fact that there was so much opposition to this business use, the Board sees no justification for making an exception in changing the present use of this property as it is in our opinion that there are other available pieces of property more isolated that could be used for purposes desired in preference to the present one under consideration. We, therefore, deny the application.”
Spohrer caused to be organized an unincorporated association named Hieksville Airpark Club and caused it to make the application for the permit now under review in September, 1945. The application was granted on September 20, 1945, the day it was heard by the board, in a written decision which in part read as follows: “ Some weeks ago, the Board in reviewing the case of the above appellant for a piece of land adjacent and to the west of Bobbins Lane, Jericho, New York, after a careful review of the situation felt that the strip of land in question was not in their opinion best adapted for a commercial airfield for the reason that in the first place, it was an exceptionally narrow piece of land and it was the feeling of the Board that there was not sufficient space for even small planes to take off in easterly or westerly direction as would be required when the wind was blowing from these directions, and secondly, that there was almost unanimous disfavor from the nearby and adjacent property owners to the proposed variance * * * ”.
In October, 1945, Spohrer organized a corporation, Hieksville Airpark, Inc. That corporation then took title to the property comprising the aviation field in question, obtained building permits, erected on the property an office building and hangars, installed gasoline tanks and pumps and the property was thereafter used as an aviation field until about October 15, 1946.
The petitioners herein challenged the legality of this use and by an order of this court dated August 2, 1946 made in a prior certiorari proceeding, the permit granted by the board in September, 1945, and all building permits and certificates of occupancy granted thereunder were annulled. This order was based upon the fact that there was no record of proceedings *260 before the Board of Appeals sufficient to justify the granting of the permit, and inasmuch as the record of what transpired before the board was incomplete, the Supreme Court by said order remitted the application of Hicksville Airpark Club to the Board of Appeals with directions that if the board determined to hold any new hearing then a complete record of the testimony taken at such hearing should be made.
Hicksville Airpark, Inc., then filed an application for a special exception permit for it to have an aviation field on this land. Upon the hearing thereon, this application was withdrawn. Thereupon Hicksville Airpark Club brought on hearings in October, 1946 before the board based upon its application of September, 1945. The board again granted the application under date of November 27, 1946, which is the decision now under review.
The petitioners maintain that the determination of the Board of Appeals must be reversed for several reasons :
First, it is claimed that the construction or operation of the field is absolutely prohibited by section 249 of the General Business Law which became effective April 24, 1946.
Second, it is claimed that even if section 249 of the General Business Law aforesaid were not in existence the board’s action was illegal because of failure to require fulfillment of certain conditions precedent prior to the issuance of the permit, in accordance with the provisions of subdivision C of section 18 of the Building Zone Ordinance of the Town of Oyster Bay.
Third, it is claimed that the delegation in the Zoning Ordinance to the Board of Appeals of power to permit the establishment of an aviation field in a residence district is an unconstitutional delegation of legislative power because, in effect, it delegates to the Board of Appeals the right to rezone, and because the location of an aviation field in a residence district is so out of harmony with the general purpose of the Zoning Ordinance as to make it impossible to permit such location and at the same time to safeguard the character of the residence district.
Fourth, that the board’s authorization for the use of the land for an aviation field cannot be justified by reason of the Civil Aeronautics Administration “Landing Area Designation” of the field.
Fifth, that the Hicksville Airpark Club is not the real party in interest.
Sixth, that the board’s action was an abuse of discretion, is capricious and arbitrary.
The court will discuss some of these matters seriatim.
*261 By chapter 998 of the Laws of 1946, section 249 of the General Business Law was added. This statute became effective April 24, 1946. By its terms it regulated the uncontrolled establishment and use of airports or landing fields. By subdivision 3 thereof spacing between existing and proposed airports was required to be at least the sum of the radii prescribed for each airport in accordance with size classification, and this was one of the conditions precedent to the construction or operation of an airport. At the hearing before the Board of Appeals on October 22, 1946, it was established without contradiction (1) that the proposed airport under consideration came within the classification of a Class I Airport as that term is used in subdivision 3 of section 249, aforesaid; (2) that Grumman Airport is a private airport which has been continuously in operation since long prior to the date of Hicksville Airpark Club’s application; (3) that Grumman Airport is established as a Class IY Airport; (4) that the distance between the center of Grumman Airport and the center of the proposed aviation field is slightly less than four miles. The radius established by subdivision 3 of section 249, aforesaid, for Class I Airports is one mile and for Class IY Airports is four miles. The sum of such radii is five miles. Therefore the Hicksville Airpark Club field being less than five miles from Grumman Airport is in violation of the space requirements of section 249 aforesaid. The prohibition of the establishment of the airport in question on the facts before this court seems to be and is absolute on its face but the attorney for the intervenor-defendant, Hicksville Airpark Club, maintains that since section 249 aforesaid became effective on April 24, 1946, it has no bearing on the application in question because that application is based on the law that controlled in September, 1945. Such claim of the intervenor-defendant is invalid.
When the permission, permits and certificates, under the color of which the proposed aviation field was constructed and operated prior to April 24,1946, were annulled by the Supreme Court order of August 2, 1946, it became the law of this case that all such activities, whether consisting of the establishment of the airport, the erection of structures thereon, or its operation, had at all times been illegal. (Golde Clothes Shop v. Loew’s Buffalo Theatres, 236 N. Y. 465.) In that case Judge Cabdozo, referring to the order on which the defendant had relied, said in part (p. 470): “ When the order was reversed and the proceeding dismissed, rights and duties were re-established, inter partes, as if no order had been made.”
*262 In other words, it is only a legal use of property which establishes any rights contrary to the prohibition of a statute adopted after the establishment of the use.
Nor did the applicant acquire any vested right to maintain its structures and continue its operation because it applied for a permit for this aviation field in September, 1945, or because of what it did prior to and after April 24, 1946. 'When the permit granted by the Board of Appeals on September 20,1945, and all the building permits thereunder were annulled by the court, all the parties interested, including Hicksville Airpark Club, and the owners of adjacent properties were left in the same position as when the application was first filed with the Board of Appeals on September 11, 1945. The situation was precisely as though no permit had ever been granted. It follows, therefore, that prior to April 24, 1946, the date section 249 of the General Business Law became effective, the applicant never had the legal right to establish or operate an airpark or aviation field upon the land comprising this proposed aviation field or to erect any structure upon these premises.
The Board of Appeals had no power, jurisdiction or authority to grant a permit to Hicksville Airpark Club to have an aviation field or airpark on the property in question because under subdivision C of section 18 of the Zoning Ordinance, such power is granted to said board only in cases where:
(a) public convenience and welfare will be substantially served; (b) the appropriate use of neighboring property will not be substantially or permanently injured, and (c) the permit is made subject to appropriate conditions and safeguards.
In this case the granting of such permit to a club, i.e., Hicks-ville Airpark Club, did not in any way serve the public convenience and welfare. The very word “club” indicates that it was in no sense a use for the public.
The evidence before the board proved that neighboring property would be substantially injured and damaged by the granting of the permit. There was evidence before the Board of Appeals that established that planes from the airpark in taking off and landing, circled over the houses in that vicinity just above treetop heights, that the noise of the planes annoyed and frightened some of the inhabitants, that prospective tenants have been lost by reason of the operation of the airpark, that cows have been scared by the planes, that in one herd of 48 cows, 6 calves were born dead, that the fright which the cows get from airplanes is a competent producing cause of calves being born dead, that the inhabitants were annoyed and disturbed and their peace and quiet interfered with and that the operation of the *263 airpark has caused a general depreciation of the value of the properties in that vicinity.
No attempt was made by the board to make its decision and permit subject to any conditions or safeguards whatsoever.
But even if we were to assume that there had been a compliance with the conditions precedent heretofore set forth, the special exception section herein, in the opinion of the court, would be unconstitutional. Zoning is a proper subject for legislative regulation by the Town Board. It is a legislative power residing in the State which may be delegated to the Town Board. (Green Point Sav. Bank v. Board of Zoning Appeals of Town of Hempstead, 281 N. Y. 534, 538.) However, when the Town Board delegates or attempts to delegate such power which it did herein in the enactment of the special exceptions section it must establish standards for the exercise of the discretion delegated. (Matter of Trustees of Vil. of Saratoga Springs v. Saratoga Gas, Elec. Light & Power Co., 191 N. Y. 123; Panama Refining Co. v. Ryan, 293 U. S. 388; Brous v. Town of Hempstead, 272 App. Div. 31.) The preamble is too general in its terms to be claimed to be any attempt to lay down any standards. In Panama Refining Co. v. Ryan (supra) it was held that a delegation of legislative power to an administrative officer is not brought within the permissible limits of such delegation by prescribing the public good as the standard for the administrative officer’s action. So therefore the additional ground that the special exception section does not prescribe any norm under which the Board of Appeals could be guided in its dispensation of exceptions thereunder is an additional reason for holding that that portion of the ordinance is invalid.
But there is still a further difficulty herein. If it be claimed that the permit granted was not issued under the special exception section (§ 18, subd. 0), then necessarily it must have been issued under subdivision B of section 18. Applications for an ordinary variance under section 267 of the Town Law, as well as under subdivision B of section 18 of the Zoning Ordinance, may only be granted in cases where practical difficulties or unnecessary hardships were shown. There was no such showing either in the application or in the hearings before the board.
The Hicksville Airpark Club is not the real party in interest herein. It has no title to or interest in the property, no obligation, contractual or otherwise, to Hicksville Airpark, Inc., or to the town, or to any other body, no responsibility, financial or otherwise. Hicksville Airpark, Inc., owned entirely by George V. Spohrer, and not the Hicksville Airpark Club, is the Teal party in interest.
*264 With respect to the claim of petitioners that the action of the board was arbitrary and capricious, the record shows that across Bobbins Lane from the aviation field which is the subject of this controversy is located the Froelich parcel of land heretofore mentioned consisting of 34% acres. This property was Spohrer’s first choice for an aviation field. His application was denied as hereinbefore set forth. It is to be noticed that the petitioners in this proceeding, and the objectors before the board on this present application, are those same adjacent property owners “ to the north, to the west and to the east,” and to the south, as well, who are referred to in the decision. Bobbins Lane, which is 20 to 30 feet wide, separates the two fields. It is the contention of the petitioners herein that that distance of 20 to 30 feet does not make the property involved herein “ more isolated.”
When the board granted the application on November 27, 1946, for use of the property herein as an airfield, the opposition was exactly the same as it was in connection with the first application which it had denied. The petitioners point out that a comparison of the decision on the first application and that upon the application under consideration shows that there was nothing in the board’s decision on the original application about the Froelich property not being “ best adapted for a commercial air field,” or being “ an exceptionally narrow piece of land.” It is difficult to understand how the board could so completely reverse itself in a situation where the facts were practically identical as to each application, and because of the fact that no good reasons have been indicated in the decision for such change of position taken in connection with the proof before the board as heretofore indicated, the court is of the opinion that the action by the board was arbitrary and capricious, which alone would justify the granting of the application herein.
In view of the determination made by the court herein upon the issues discussed, the court finds it unnecessary to pass upon the other points raised by the petitioners.
The decision of the Board of Appeals now before this court for review in this proceeding is reversed. The application of Hicksville Airpark Club for a permit to maintain this aviation field on the property in question is denied, and all existing permits and certificates thereunder or predicated thereon are in all respects annulled.
Settle order on notice.